UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MOHAMMAD HAKEEM, M.D.,

    Plaintiff,

v.                          CASE NO. 8:04-cv-1329-T-26EAJ

UNION CENTRAL LIFE
INSURANCE COMPANY,

    Defendant.
_____/

**DEFENDANT'S MOTION TO COMPEL DISCOVERY
FROM FLORIDA HEALTH SCIENCES CENTER, INC.
AND INCORPORATED MEMORANDUM OF LAW**

**I. INTRODUCTION**

Defendant, Union Central Life Insurance Company ("Union Central"), pursuant to Rules 37(a)(2)(B) and 45(c)(2)(B) of the Federal Rules of Civil Procedure and Local Rule 3.04(a), moves to compel Florida Health Sciences Center, Inc. ("FHSC"), a non-party to this action, to produce documents responsive to Item No. 1 of a Subpoena In A Civil Case (the "Subpoena") served on FHSC on September 16, 2004. Contrary to FHSC's objection, these documents are not protected from disclosure by Florida's Peer Review Privilege because this action is not against a provider of professional health services, and it does not arise out of matters which are the subject of evaluation and review by a peer review board or committee. Pursuant to Local Rule 3.01(g), counsel for Union Central conferred with FHSC's counsel in a good faith effort to resolve the relief sought by this Motion, but the parties have been unable to resolve this discovery dispute.

## II. BACKGROUND

### A. Nature of this Action

This is an action brought by Plaintiff, Mohammad Hakeem, M.D. ("Plaintiff") to recover benefits under two disability insurance policies issued by Union Central to Plaintiff (the "Policies"). In his one count Complaint, Plaintiff alleges that Union Central breached the terms of the Policies because Union Central denied his claim for disability benefits under the Policies. A copy of the Complaint is **Exhibit A**. On or about July 10, 2003, Plaintiff submitted his claim for benefits to Union Central. He advised Union Central that he was a cardiovascular and thoracic surgeon[1] and that, for the period from at least 1990 through the present, he had surgical privileges at, inter alia, Tampa General Hospital. Plaintiff has further claimed to Union Central that due to his alleged disabling condition, he was no longer able to perform certain surgeries for a period of time beginning in 1995 and until 2003, at which point he claimed that he ceased performing surgeries of any kind.

### B. The Subpoena

On September 16, 2004, Union Central served Tampa General Hospital, which is purportedly operated by FHSC, with the Subpoena, commanding its Records Custodian to produce the following records to Union Central's counsel:

> 1. Any and all documents relating to the surgical privileges of **MOHAMMAD HAKEEM, M.D.,** for the period 1990 through present, including but not limited to applications submitted by Dr. Hakeem for such privileges; letters, references, medical records or other documents

---

[1] It should be noted that based on the information currently available to Union Central, including but not limited to Plaintiff's substantial involvement in several real estate companies, **Union Central does not concede that Plaintiff's occupation or regular occupation, as defined by the Policies, is that of a physician or cardiovascular and thoracic surgeon**.

2

> submitted in support of any applications for privileges; and any documents regarding any limitations or restrictions to Dr. Hakeem's privileges.
> 
> 2. Any and all documents, including but not limited to computer records, patient ledger cards or other documents reflecting surgeries performed by **MOHAMMED HAKEEM, M.D.,** including the type of surgery, the date the surgery was performed, and whether Dr. Hakeem performed surgery or assisted the surgery, for the period 1990 through present.

**Exhibit B**. FHSC provided documents responsive to Item No. 2 of the Subpoena, but failed to provide documents responsive to Item No. 1 of the Subpoena. On October 15, 2004, FHSC objected to the production of documents responsive to Item No. 1, contending that: (1) the requested documents were materials either generated, considered, or both by FHSC through its peer review, credentialing, and medical review committee processes; and (2) as such, the requested documents were privileged and therefore protected from discovery under Florida law. **Exhibit C**. As will be shown below, Florida's Peer Review Privilege is inapplicable to the instant case and, therefore, the requested documents are not protected from discovery. Counsel for Union Central and Counsel for FHSC have conferred regarding the issues raised in FHSC's objection by letters dated November 3, 2004, November 11, 2004, and November 17, 2004, but have been unable to resolve this matter. **Exhibit D**.

### III. <u>ARGUMENT</u>

#### A. The Peer Review Privilege

Sections 766.101 and 395.0191, Florida Statutes (2004), pertain to peer review and credentialing by hospitals and other health care organizations. <u>See</u> <u>Cruger v. Love</u>, 599 So. 2d 111, 112 (Fla. 1992). Section 766.101(2) mandates that medical review committees screen, evaluate, and review the professional and medical competence of

applicants to and members of medical staffs. Section 395.0191(1)(b) requires that the governing boards of licensed medical facilities set standards and procedures to be applied by the facility and its medical staff when considering and acting upon applications for staff membership. Both statutory provisions contain provisions which provide a limited protection from discovery for certain materials generated during these peer review processes. According to Section 766.101(5):

> The investigations, proceedings, and records of a committee as described in the preceding subsections shall not be subject to discovery or introduction into evidence **in any civil or administrative action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee**, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify **in any such civil action** as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions, or other actions of such committee or any members thereof. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his or her knowledge, but the said witness cannot be asked about his or her testimony before such a committee or opinions formed by him or her as a result of said committee hearings.

§ 766.101(5), Fla. Stat. (2004) (emphases added). Likewise, Section 395.0191(8), provides as follows:

> The investigations, proceedings, and records of the board, or agent thereof with whom there is a specific written contract for the purposes of this section, as described in this section shall not be subject to discovery or introduction into evidence **in any civil action against a provider of professional health services arising out of matters which are the subject of evaluation and review by such board**, and no person who was in attendance at a meeting of such board or its agent shall be permitted or required to testify **in any such civil action** as to any evidence or other matters produced or presented during the proceedings of such board or its agent or as to any findings, recommendations, evaluations, opinions, or

4

>   other actions of such board or its agent or any members thereof. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such board; nor should any person who testifies before such board or who is a member of such board be prevented from testifying as to matters within his or her knowledge, but such witness cannot be asked about his or her testimony before such a board or opinions formed by him or her as a result of such board hearings.

§ 395.0191(8), Fla. Stat. (2004) (emphases added).  These peer review statutes were enacted for the purpose of controlling the escalating cost of health care by encouraging self-regulation by the medical profession through peer review and evaluation.  Beverly Enterprises-Florida, Inc. v. Ives, 832 So. 2d 161, 162 (Fla. 5th DCA 2002) (citing Holly v. Auld, 450 So. 2d 217, 219-20 (Fla. 1994)).  The Florida courts have previously held that the discovery privilege described above was "clearly designed to provide that degree of confidentiality necessary for the full, frank medical peer evaluation which the legislature sought to encourage."  Id.  However, this protection does not apply to information supplied by a physician regarding his health in applications for privileges when the doctor subsequently files suit against an insurance company for breach of a disability policy.  See Sack v. UNUM Life Ins. Co. of America, Case No. 99-192-Civ-T-25C, (M.D. Fla. March 24, 2000); Toyos v. Northwestern Mut. Life Ins. Co., 1 F. Supp. 2d 1462, 1465 (S.D. Fla. 1998).

**B. Federal District Courts in Florida Have Previously Determined that the Peer Review Privilege Does Not Apply in an Action Brought by a Plaintiff, Who Purports to be a Physician, Against His or Her Disability Insurer**

The situation presented in this case is factually and legally identical to the situation in Toyos v. Northwestern Mutual Life Ins. Co., 1 F. Supp. 2d 1462 (S.D. Fla. 1998).  In Toyos, the insured was a doctor who brought an action against an insurer for

5

breach of three disability insurance policies. In that case, the insured alleged that he became totally disabled from performing the principal duties of his occupation as a medical doctor. The insurer was forced to file motions to compel six non-party hospitals to produce, inter alia, all documents relating to the application for, or the granting, continuation or termination of the insured's privileges.

Agreeing that the Peer Review Privilege did not apply, the court in Toyos stated that "even the most liberal reading of the peer review privilege would fail to protect the applications in this action **brought by a doctor against an insurance company for breach of disability income insurance policies**." Id. at 1464 (emphasis added). With respect to the second element of the Peer Review Privilege -- whether the action arises out of the matters that were the subject of evaluation and review by a peer review board or committee -- the Toyos court made it clear that the action **did not involve the insured's competency as a physician**, and the insurer's request did not relate to the hospitals' evaluation of the competency of the insured. Id. Therefore, the court held that the Peer Review Privilege did not apply.[2]

It should also be noted that in Sack v. UNUM Life Ins. Co. of America, Case No. 99-192-Civ-T-25C, (M.D. Fla. March 24, 2000), this Court, citing Toyos, denied a non-party hospital's Motion for Protective Order in an identical case. **Exhibit E**. Like Toyos, the plaintiff, who was a physician, sued his disability insurer for breach of contract to recover benefits under two disability insurance policies. After receiving a subpoena, a

---

[2] The court in Toyos also addressed an opinion from the Southern District of Florida, Martinez v. Provident Life and Accident Ins. Co., 174 F.R.D. 502 (S.D. Fla. 1997), which had an opposite holding. The court noted that the trial judge in Martinez "did not specifically analyze whether [the] case was a civil action '**arising out of matters which are the subject of evaluation and review' by the relevant board or committee**." Toyos, 1 F. Supp. 2d at 1466.

6

non-party hospital board moved for a protective order, contending that the requested documents were protected by the Peer Review Privilege. This Court concluded that the Peer Review Privilege was inapplicable because (1) the case did not involve a provider of professional health services, and (2) the case did not arise from matters that were evaluated and reviewed by a hospital committee, board or panel. Sack, Slip. Op. at 4.

### C. Contrary to FHSC's Representations in its Objection to Subpoena, the Florida District Courts of Appeal Have Not Expanded the Peer Review Privilege to Include All Documents in All Actions

In its Objection to Subpoena, FHSC relies heavily on *dicta* from the cases of Miami Heart Institute v. Reis, 638 So. 2d 530, 531-32 (Fla. 3d DCA 1994) and Bayfront Medical Center, Inc. v. State of Florida, Agency for Health Care Administration, 741 So. 2d 1226 (Fla. 2d DCA 1999) for the proposition that the Peer Review Privilege gives hospitals *carte blanche* to withhold the production of any document in any civil action based upon the Peer Review Privilege. Such an argument constitutes a complete mischaracterization of both cases. Rather, the Florida Supreme Court cases of Holly v. Auld, 405 So. 2d 217 (Fla. 1984) and Cruger v. Love, 599 So. 2d 111 (Fla. 1992) clearly set the limits of the Peer Review Privilege.

In Holly, the Florida Supreme Court answered a certified question as to whether the Peer Review Privilege was limited to actions against providers of health care services based on medical malpractice or should be expanded to defamation actions. Holly, 450 So. 2d at 218. In that case, the plaintiff was a physician who filed a defamation action against the chief of neurosurgery at a hospital and three other physicians after the hospital denied the plaintiff's application for staff privileges. Id. The plaintiff sought the discovery of the hospital credentials committee's records and sought to examine

7

witnesses regarding the denial of staff privileges. Id. In discussing the Peer Review Privilege, the Court noted the great need for confidentiality when a credentials committee elicits opinions from doctors about one of their colleagues in order to determine that colleague's fitness for staff privileges. Specifically, the Court referred to the reluctance of the doctor being questioned by the review committee to make statements, however truthful or justifiable, for fear that those statements would lead to a defamation action against the doctor, or a malpractice action against the colleague being reviewed. The court eventually concluded that the Peer Review Privilege "is not limited to medical malpractice actions and, in fact, includes defamation actions **arising out of the matters which are the subject of evaluation and review by hospital credentials committees**." Id. at 221. The Florida Supreme Court made no other holding in this case with respect to the scope of the Peer Review Privilege.

In its Objection to Subpoena, FHSC portrays Cruger as a case in which the Florida Supreme Court held that any document considered by a hospital committee or board as part of its decision-making process "with regard to staff privileges is protected and not subject to discovery."[3] **Exhibit C**, ¶ 10. While this is a true statement of Cruger, FHSC neglects to mention that, before approving the decision of the lower court, the Florida Supreme Court analyzed the issue of whether the action was one **arising out of the matters which are the subject of evaluation and review by a peer review committee**. Cruger, 599 So. 2d at 114. In Cruger, the defendant physician was sued as a

---

[3] In response to an identical Subpoena, a different medical provider, South Florida Baptist Hospital, is producing records responsive to the Subpoena pursuant to a Confidentiality Stipulation with Union Central. Union Central would be willing to enter into a similar Stipulation with FHSC as well. A copy of the Confidentiality Stipulation is **Exhibit F**.

8

result of the allegedly negligent treatment of a fractured thumb. Id. at 112. The plaintiff sought copies of the defendant's applications for privileges at three local hospitals. Id. The defendant objected based on the Peer Review Privilege. Id. After looking to the legislative intent behind the Peer Review Privilege, the court held that the privilege protected any document considered by the committee or board as part of its decision-making process. Specifically, the court stated "that a physician's application for staff privileges is a record of the committee or board for purposes of the statutory privilege." Id. at 114. In considering the scope of the Peer Review Privilege, the Florida Supreme Court rejected the argument that an application for privileges was not privileged because it was not generated by the committee and did not include comments on the applicant's competence. Id. at 113.

Contrary to FHSC's implication in its Objection to Subpoena, however, the Florida Supreme Court's inquiry did not end with its determination that the privilege applied to applications for staff privileges. Id. Rather, the court went on to consider whether the action was one **arising out of the matters which are the subject of evaluation and review by a peer review committee**. Given that the action was a medical malpractice action where the defendant's professional and medical competence was an issue, the privilege clearly applied. Thus, based on (1) its holding that applications for privileges are covered by the Peer Review Privilege, and (2) its holding that the medical malpractice action arose out of matters which are the subject of evaluation and review by a peer review committee because the action called into question the defendant's professional and medical competence, the Court concluded that the privilege applied. Id. at 115.

Since Cruger, the Florida District Courts of Appeal have applied the Peer Review Privilege and, in *dicta*, have discussed the privilege in broad terms. However, like the Florida Supreme Court, the District Courts of Appeal have not held that that the Peer Review Privilege provides a hospital with *carte blanche* to withhold the production of peer review records in any conceivable civil action. For example, in its Objection to Subpoena, FHSC cites to the case of Reis, 638 So. 2d 530, 531-32 (Fla. 3d DCA 1994) for the proposition that other Florida appellate courts have held that all records relating to staff privileges are protected. This, however, is a mischaracterization of the holding in Reis. In Reis, the plaintiff, a physician, sued a hospital and two of its administrators for **defamation**, breach of contract, and tortuous interference with a business relationship, alleging that they conspired to oust him from his position as head of the cardiac unit at the hospital. Reis, 638 So. 2d 531. In addition, the plaintiff alleged that a letter written regarding the circumstances of the plaintiff's departure from the hospital was sent to medical review committees at other hospitals that were considering the plaintiff for staff privileges. Id. Pursuant to the Peer Review Privilege, one of those hospitals objected to the defendants' subpoena for any and all records that related to the plaintiff's application for staff privileges. Id. The Third District Court of Appeal concluded that the Peer Review Privilege applied, citing to the Florida Supreme Court's holding in Holly that the Peer Review Privilege applied in **defamation** actions. Id. With respect to the defendants' argument that an exception should be made for defendants in cases where the hospital was not a party, the Third District cited to the Cruger opinion and, in ***dicta* and without citation to any authority**, stated that

> The constancy of the privilege, which is thus far absolute, does not vary with the nature of the litigation or the procedural posture of the case, and does not depend upon whether the medical review committee is a party or merely a potential source of information.

Id. at 532. When read in context with the remainder of the opinion, it is apparent that the Third District was not attempting to broaden the Peer Review Privilege beyond the boundaries set forth by the Florida Supreme Court. Rather, Reis is a combination of the issues presented in Holly and Cruger – a defamation action against a hospital and its administrators "arising out of the matters which are the subject of evaluation and review by hospital credentials committees" where a third-party hospital asserted the Peer Review Privilege in response to a subpoena for records relating to staff privileges. In fact, the Florida District Courts of Appeal have not strayed from Holly and Cruger in applying the Peer Review Privilege. See, e.g., Boca Raton Community Hospital v. Jones, 584 So. 2d 220 (Fla. 4th DCA 1991) (privilege applied in malpractice action against physician).

Another case in which FHSC confuses mere *dicta* with the court's actual holding is Bayfront Medical Center, Inc. v. State of Florida, Agency for Health Care Administration, 741 So. 2d 1226 (Fla. 2d DCA 1999). In Bayfront, a hospital challenged a summary judgment that enforced an administrative subpoena issued by the Agency for Healthcare Administration ("AHCA"). AHCA, pursuant to Section 395.0197, Florida Statutes, was permitted by statute to obtain records pertaining to a hospital's "risk management" program which is primarily directed at nonphysician personnel. See Bayfront, 741 So. 2d at 1228-29. The statute required medical facilities to make annual reports to AHCA which summarized incident reports filed with the facility. The Second District Court of Appeal rejected AHCA's argument that its ability to obtain records

overrode the peer review privilege. Id. at 1229. Rather, the Second District acknowledged that "peer review" was a separate and distinct process from "risk management" and thus, the AHCA's access to records did not pierce the Peer Review Privilege. Id. Thus, the court concluded that the records of the investigative portion of the peer review panel were privileged, noting in *dicta* that the Florida courts have construed the Peer Review Privilege in the broadest manner to protect the integrity of the peer review process. Id.

### D. The Peer Review Privilege Does Not Apply Because This Action: (1) Is Not Against A Provider Of Professional Health Services, and (2) Does Not Arise Out Of Matters Which Are The Subject Of Evaluation And Review By A Peer Review Board Or Committee

With respect to the Subpoena, the Peer Review Privilege is inapplicable because this action is not against a provider of professional health services, and does not arise out of matters which are the subject of evaluation and review by a peer review board or committee. Rather, this action was **brought by an insured**, who alleges that his regular occupation is that of a thoracic and cardiovascular surgeon, **against an insurer** for **breach of two disability insurance policies**. Accordingly, the Peer Review Privilege does not apply.

As in Toyos and Sack, the Peer Review Privilege does not apply to protect the subpoenaed records in the instant case. This action was brought by Plaintiff, an insured who claims to be a physician who performed surgeries at Tampa General Hospital, against an insurer for alleged breach of two disability policies. In addition, the action does not involve Plaintiff's competency as a physician, and certainly does not relate to Tampa General Hospital's evaluation of Plaintiff's competency as a physician. Rather,

the issue at trial will be whether Plaintiff is disabled from his occupation or regular occupation, **whether it be as a physician or otherwise**, as defined by his Union Central Policies. In addition, Plaintiff claims to be disabled as defined by the Policies dating back to the mid-1990s. However, it is likely that Plaintiff made representations to FHSC regarding his ability to perform surgeries during the time that he now claims to have been disabled as defined by the Policies, thereby making those representations highly relevant to this action. Thus, like Toyos, the Peer Review Privilege does not apply.

## IV. CONCLUSION

For the above reasons, this Court should require FHSC to provide documents responsive to Item No. 1 of the Subpoena. Alternatively, this Court should order the production of responsive documents pursuant to a Confidentiality Stipulation such as the one Union Central has already entered into with another hospital, South Florida Baptist Hospital, regarding these same types of records.

Dated: January 18, 2005

PETT, FURMAN & JACOBSON PL
Attorneys for Defendant
2101 N.W. Corporate Blvd., Suite 316
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By: __s/Kristina B. Pett_____
  KRISTINA B. PETT
  Fla. Bar No. 0973688
  kpett@pfjlaw.com
  LONN WEISSBLUM
  Fla. Bar No. 0498017
  lweissblum@pfjlaw.com

## **CERTIFICATE OF SERVICE**

I certify that on January 18, 2005, a copy of this document was served by U.S. Mail on:

>Paul E. Parrish, Esq.
>Holland & Knight LLP
>100 N. Tampa St.
>Suite 4100
>Tampa, FL 33601-1288
>
>Edward J. Carbone, Esq.
>Buchanan Ingersoll PC
>401 E. Jackson St.
>Suite 2500
>Tampa, FL 33602

>s/Kristina B. Pett_____
>Kristina B. Pett